CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
REBECCA M. ABEL (Bar No. 298604)
(E-Mail: rebecca_abel@fd.org)
KYRA NICKELL (Bar No. 328816)
(E-Mail: kyra_nickell@fd.org)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
ISAIAS LOPEZ

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ISAIAS LOPEZ,<br><br>Defendant. | Case No. 2:25-cr-00705-MEMF<br><br>**DEFENDANT'S OPPOSITION TO GOVERNMENT'S MOTION *IN LIMINE* #2 TO PRECLUDE ANY REFERENCE TO, TESTIMONY REGARDING, OR ARGUMENT THAT DEFEDANT'S CONDUCT WAS PROTECTED BY THE FIRST AMENDMENT**<br><br>Hearing Date: November 5, 2025<br>Hearing Time: 3:00 p.m.<br>Hon. Maame Ewusi-Mensah Frimpong |

Defendant Isaias Lopez, by and through his undersigned counsels of record, Rebecca M. Abel and Kyra Nickell, hereby opposes the government's motion in limine to preclude any preference to testimony regarding, or argument that defendant's conduct was protected by the First Amendment.

This motion is based on the attached memorandum of points and authorities, the attached exhibits, all files and records in this case, and any argument presented at any hearing on this matter.

                                      Respectfully submitted,

                                      CUAUHTEMOC ORTEGA
                                      Federal Public Defender

DATED: October 30, 2025       By  /s/ *Rebecca Abel*
                                      REBECCA M. ABEL
                                      KYRA NICKELL
                                      Deputy Federal Public Defenders
                                      Attorney for ISAIAS LOPEZ

# MEMORANDUM OF POINTS AND AUTHORITY

## I. INTRODUCTION

On August 8, Mr. Lopez was a member of the media, photographing a public event—a protest at the Metropolitan Detention Center of ongoing immigration enforcement actions across Los Angeles. While photographing the protestors and the officers, the government alleges Mr. Lopez assaulted one of the officers he was photographing. These are the facts that are the basis of this case. They are not only relevant, they are critical to an understanding of Mr. Lopez' and Inspector Ranjo's actions.

The government wants to preclude the defense from discussing the essential facts of the case. It "moves to preclude any reference to, testimony regarding, or argument suggesting that defendant's conduct was protected by the First Amendment." (Dkt. No. 31 at 1.) To be clear, the defense will not argue to the jury that Mr. Lopez had a right to assault Inspector Ranjo under the First Amendment. However, Mr. Lopez' non-assaultive conduct—his photography, his coverage of the protest, his presence there that evening—is First Amendment activity. That is both relevant and admissible. As is Inspector Ranjo's motive for targeting Mr. Lopez. Ranjo sought out and attacked Mr. Lopez because he was photographing him—because he was engaged in First Amendment activity. The defense is entitled to present this theory of defense at trial.

## II. ARGUMENT

Some context for the government's motion is critical to understanding the reason for its filing. First, the defense lays out an order from this District, finding that FPS officers, including Inspector Ranjo, violated journalists' First Amendment rights and retaliated against them. Second, the defense explains how this order, and its findings, are crucial to the defense's theory at trial and cannot be excluded.

**A.  The Preliminary Injunction Issued Against FPS**

On June 18, 2025, a group of journalists, legal observers, and protestors filed a complaint in this District alleging claims for First Amendment right of access and

retaliation against Federal Protective Services ("FPS"), Immigration and Customs Enforcement, and U.S. Customs and Border Protection. *L.A. Press Club v. Noem*, Case No. 2:25-CV-5563-HDV, Dkt. No. 1 (C.D. Cal. June 18, 2025). On July 18, 2025, the plaintiffs moved for a preliminary injunction on their First Amendment claims, citing, *inter alia*, "extensive record evidence" concerning the FPS' officers response to the protests at the Roybal Federal Building and the Metropolitan Detention Ceter. *Id.*, Dkt. No. 55 at 4-8, 12-13, 30 (attached as Ex. A). On September 10, 2025, the Court (Vera, J.) granted the preliminary injunction. *Id.* His findings are notably relevant to this case, as Mr. Lopez' case involves FPS' response to the protest behind Roybal and MDC on August 8, 2025.

First, Judge Vera noted the importance of journalists to cover the immigration protests across Los Angeles. Judge Vera started just where Mr. Lopez' case begins: "In the wake of this summer's immigration raids across Southern California, the world watched as protests multiplied. As expected, members of the press did what they have always done: positioned themselves at the scene to report on, record, photograph, and observe these events of immense public importance." *Id.* at 2. The Court found this conduct was undisputably protected by the First Amendment. "Newsgathering, observing government conduct, and protest are each considered paradigmatic protected activities." *Id.* at 27.

The Court then addressed the plaintiffs two specific First Amendment claims: retaliation and right of access. Addressing the claim that federal officers retaliated against the plaintiffs due to their First Amendment activity, Judge Vera held "the avalanche of evidence before the Court—along with federal officials' statements— suggests that federal agents acted pursuant to a common and widespread practice of violating the First Amendment rights of journalists, legal observers, and protestors." *Id.* at 33. Addressing specifically FPS' response to protests at MDC, he cited evidence that "the actions of law enforcement sometimes appeared targeted at individuals filming the agents," like Mr. Lopez. *Id.* at 5; *see id.* at 30 (citing "the extensive record

2

evidence that federal officers repeatedly targeted journalists"). He further found that federal officers "excessive and indiscriminate response evinces strong and persuasive evidence of retaliatory intent." *Id.* at 29. He found persuasive that U.S. Secretary of Homeland Security Kristi Noem, who is the chief of the FPS officers, "ratified Defendants' practice of meeting First Amendment protected activities with force" in her repeated public statements sanctioning violence against photographers and videographers. *Id.* at 34 & n.28.

Second, Judge Vera addressed the claim that the federal officers abridged journalists' right of access to protests. *Id.* at 34. The Court found that the streets and sidewalks where the journalists were attacked were traditional public fora. *Id.* at 35. "[T]he public has a strong interest in ensuring access for the press" to cover the federal agents and the "operation of its government." *Id.* at 35-36. Just as Mr. Lopez was doing, Judge Vera received mountains of evidence that "journalist . . . Plaintiffs were peacefully observing protestors' interactions with law enforcement." *Id.* Directly relevant here, Judge Vera held that—contrary to Inspector Ranjo's actions—the Court was not "convinced that dispersing journalists is essential to maintaining public safety." *Id.* at 36.

After finding substantial evidence of both First Amendment claims, the Court found a preliminary injunction was necessary because federal agents continued to "use[] retaliatory force against journalists." *Id.* at 38. The injunction included several terms one of which is most relevant here. The Court enjoined federal agents, including the FPS officers involved in Mr. Lopez' case, from: "Dispersing, threatening, or assaulting any person whom they know or reasonably should know is a Journalist or Legal Observer (as defined below) unless Defendants have probable cause to believe that the individual has committed a crime unrelated to failing to obey a dispersal order." *Id.* at 43. A journalist is defined as, inter alia, a person "carrying professional gear such as professional photographic equipment." *Id.* at 44.

3

**B. Mr. Lopez' defense relies on the First Amendment.**

With the backdrop of this preliminary injunction which found that FPS violated journalists' First Amendment rights, the government moves to exclude the defense from referencing the First Amendment at all at trial—in opening, cross-examination, or closing. As noted, the defense does not intend to argue that his allegedly assaultive conduct is protected by the First Amendment. However, the defense is entitled to provide context for why Mr. Lopez was present at the protest, why Inspector Ranjo approached and attacked him, and why Inspector Ranjo used unlawful force.

A defendant has the right to argue a theory of defense supported by evidence at trial and any reasonable inferences therefrom. *United States v. Miguel*, 338 F.3d 995, 1003 (9th Cir. 2003). This is especially true at closing argument, where the defense is given wide latitude in its "presenting a theory of the case." *United States v. Ibarra*, No. 23-1282, 2024 WL 2746747, at *1 (9th Cir. May 29, 2024) (citing *United States v. Hernandez-Meza*, 720 F.3d 760, 765 (9th Cir. 2013)); *Conde v. Henry*, 198 F.3d 734, 739 (9th Cir.1999) ("denying an accused the right to make final arguments on his theory of the defense denies him the right to assistance of counsel"). Specifically, limitations on closing argument that leave counsel "unable to frame and give content to the core of his defense" are improper and require reversal. *United States v. Kellington*, 217 F.3d 1084, 1101 (9th Cir. 2000).

The defense is entitled to argue to the jury that Mr. Lopez had a non-nefarious purpose for being at the protest on August 8. He was there to act as a photographer, to document the protest, and to observe and document the officers' response. As Judge Vera made plain, these actions are quintessential First Amendment activity. Even more relevantly, consistent with Judge Vera's order, the defense intends to argue that Inspector Ranjo "targeted [] individuals filming the agents," namely, Mr. Lopez. Ex. A, *L.A. Press Club v. Noem*, Case No. 2:25-CV-5563-HDV, Dkt. No. 55 at 5 (C.D. Cal. Sept. 10, 2025). Then, just as in the preliminary injunction order, Inspector Ranjo retaliated against Mr. Lopez for his First Amendment protected activity by engaging in

an "excessive and indiscriminate response" to his photography. *Id.* at 29. Ranjo did not like being photographed, did not like the press capturing his actions, so he got angry, he retaliated. He acted with hate and with force against Mr. Lopez for his undisputably legal activity: covering the officers who are supposed to protect us. The defense must be permitted to present its full defense to the jury, including the factual and contextual basis for Mr. Lopez' presence at the protest and the reasons that Ranjo's actions are unlawful.

Consistent with Model Instruction No. 5.10 on self-defense, the government must prove beyond a reasonable doubt that Inspector Ranjo did not use "unlawful force." Ninth Cir. Mod. Jury Instr. No. 5.10. Unlawful force includes force that is taken in retaliation for a defendant's First Amendment activity. *See Ford v. City of Yakima*, 706 F.3d 1188, 1195 (9th Cir. 2013), abrogated on other grounds by *Nieves v. Bartlett*, 587 U.S. 391 (2019) ("Police officers have been on notice at least since 1990 that it is unlawful to use their authority to retaliate against individuals for their protected speech."). Because actions taken in retaliation for First Amendment activity are by definition unlawful, the fact that Mr. Lopez' non-assaultive conduct was protected by the First Amendment is directly relevant to the charged offense. The defense must be permitted to argue that Inspector Ranjo's actions were unlawful,[1] consistent with case law, and thus Mr. Lopez' responsive force was reasonable.

Similarly, the government must prove beyond a reasonable doubt that at the time of the offense, Inspector Ranjo was engaged in his "official duties." Ninth Cir. Mod. Jury Instr. No. 8.1. If, instead of performing a lawful function, Inspector Ranjo was motivated by retaliatory animus against Mr. Lopez' First Amendment protected conduct, the defense must be permitted to argue he was not engaged in his "official duties." *See United States v. Span*, 970 F.2d 573, 581 (9th Cir. 1992) (affirming an instruction that indicated an officer was performing "official duties" if he was engaged

---

[1] Contrary to the government's argument, the lawfulness of Inspector Ranjo's actions is a question for the jury, not the Court, as evidenced by the jury instruction.

1  in a "good faith performance of their duties").  Because First Amendment retaliation is
2  also relevant to the element of "official duties," it cannot be excluded from trial.
3      For these reasons, Mr. Lopez' protected First Amendment activity is highly
4  relevant to the elements of the offense that Mr. Lopez must defend against at trial.  Mr.
5  Lopez must be permitted to offer a complete explanation for his own actions and those
6  of Inspector Ranjo; both of which are directly informed by the First Amendment.

7  **C.    Mr. Lopez' defense does not violate Rule 403.**

8      The First Amendment is not confusing, nor is retaliation.  These are basic
9  principles incumbent in our constitution.  And, juries are routinely permitted to
10 consider these issues in criminal cases.  *See, e.g.*, *United States v. Freeman*, 761 F.2d
11 549 (9th Cir. 1985).  Regardless, our system of justice relies on a jury to decide
12 whether Inspector Ranjo used unlawful force.  Thus, it trusts that juries will be able to
13 decide questions of law like these in all self-defense cases.  There is nothing unique or
14 unusual about this case and the defense should not be hampered or hamstrung in its
15 arguments in the extraordinary ways suggested by the government.
16     The government argues that Rule 403 is violated because a First Amendment
17 argument is "likely to mislead the jury by suggesting that the government is
18 prosecuting defendant for his political views rather than for his physical assault of an
19 officer." (Dkt. No. 31 at 4.)  The defense need not say anything about the motive for
20 the prosecution (although Judge Vera's order certainly suggests such a suggestion
21 would not be misleading).  But, Inspector Ranjo's motive is certainly relevant, and
22 discussing it at trial is the opposite of misleading, it is central.  *See* Mueller &
23 Kirkpatrick, Fed. Evid. §  4:13 Reasons for exclusion—Unfair prejudice (4th ed. July
24 2025) (noting the relevance of "the state of mind of the victim . . . if self-defense were
25 an issue because then the victim's attitude would bear on the question whether he
26 started the affray" (internal parentheticals omitted)).
27     Nor is raising First Amendment retaliation "subtle nullification." (Dkt. No. 31 at
28 5.)  To the contrary, it asks the jury to decide questions central to the case.  Was

Inspector Ranjo engaged in the good faith performance of his official duties? Did Inspector Ranjo use unlawful force? The defense is entitled to present the jury with its theory for how it should answer those questions—just as the government is entitled to present theirs. Doing so is not nullification, it is ensuring "the defense ha[s] a fair chance to argue the evidence." *United States v. Brown*, 859 F.3d 730, 736 (9th Cir. 2017) ("[P]reventing a defendant from arguing a legitimate defense theory constitutes structural error" requiring reversal of the conviction).

### III. CONCLUSION

For the foregoing reasons, the government's motion in limine #2 to preclude any reference to the First Amendment should be denied.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: October 30, 2025        By  */s/ Rebecca Abel*
                                REBECCA M. ABEL
                                KYRA NICKELL
                                Deputy Federal Public Defenders
                                Attorney for ISAIAS LOPEZ