UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
(WESTERN DIVISION - LOS ANGELES)

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, | ) CASE NO: 2:25-cr-00705-MEMF-1 |
| | ) CRIMINAL |
| vs. | ) Los Angeles, California |
| ISAIAS LOPEZ, | ) Friday, January 23, 2026 |
| Defendant. | ) (2:21 p.m. to 2:29 p.m.) |

TESTIMONY OF ANTHONY SERMONS DURING JURY TRIAL - DAY 3

BEFORE THE HONORABLE MAAME EWUSI-MENSAH FRIMPONG,
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For Plaintiff: AUSA RAHUL R.A. HARI
AUSA JULIAN JOHN XU
U.S. Attorney's Office
312 N. Spring Street
Los Angeles, CA 90012

For Defendant: DFPD REBECCA M. ABEL
DFPD KYRA KRISTINE NICKELL
Federal Public Defender's Office
321 East 2nd Street
Los Angeles, CA 90012

Court Reporter: Recorded; CourtSmart

Courtroom Deputy: Damon Berry

Transcribed by: Exceptional Reporting Services, Inc.
20079 Stone Oak Pkwy., Ste 1105-237
San Antonio, TX 78258
361 949-2988

Proceedings recorded by electronic sound recording; transcript produced by transcription service.

**INDEX**


| GOVERNMENT'S WITNESS | DIRECT | CROSS | REDIRECT | RECROSS |
|---|---|---|---|---|
| ANTHONY SERMONS | 4 | -- | -- | -- |

**Los Angeles, California; Friday, January 23, 2026; 2:21 p.m.**

**(Partial transcript; Testimony of Anthony Sermons)**

**(Jurors present)**

**THE COURT:** Okay. And I believe we're going to return to the government's next witness. Is that it?

**MR. HARI:** Yes, Your Honor. At this time we'd call APM Anthony Sermons.

**THE COURT:** Thank you.

**(Witness summoned; pause)**

**THE CLERK:** Please raise your right hand.

**ANTHONY SERMONS, GOVERNMENT'S WITNESS, SWORN**

Please state and spell your full name for the record and please speak clearly into the mike.

**THE WITNESS:** Anthony Sermons; A-n-t-h-o-n-y S-e-r-m-o-n-s.

**THE COURT:** Good afternoon. Thank you for coming in. We are recording everyone's testimony so it's important for you to speak loudly and audibly into the microphone. Let each attorney complete each question before you start to answer it. And if you hear either side say "objection," then just stop speaking until I tell you how to proceed. Understood?

**THE WITNESS:** Yes.

**THE COURT:** Okay, thank you. Please proceed, Counsel.

**MR. HARI:** Thank you, Your Honor.

**DIRECT EXAMINATION**

**BY MR. HARI:**

Q Good afternoon, Mr. Sermons.
A Good afternoon.
Q Can you please tell the members of the jury where you're employed.
A Federal Protective Service.
Q And what is Federal Protective Service?
A A law enforcement agency for DHS.
Q So you said a law enforcement agency for DHS. Is that what you said?
A Yes.
Q We've been calling it FPS over the course of trial. Is that a common acronym for Federal Protective Service?
A Yes.
Q What are some of the primary responsibilities of FPS as an agency?
A To protect federal buildings, GSA owner leased buildings.
Q And what is "GSA"?
A General Service Administration.
Q Is that another agency of the government?
A Yes.
Q Are you assigned to a specific FPS office?
A Yes.
Q Which one is that?

A Atlanta, Georgia.
Q What's your role within FPS?
A Assessment program manager.
Q We've heard of inspectors within FPS. Is assessment program manager different than an inspector?
A Yes.
Q And what's the distinction?
A Well, I have a supervisory role and also a manager program for seven states.
Q And what program is it?
A The assessment program with the risk assessments for federal buildings.
Q And what does that mean?
A It's a look at the crime stats at the building and the surrounding area and make recommendations of the crime stats such as you know, camera systems, alarm systems, maybe (indisc.) some gates at the buildings too.
Q And maybe I'm stating the obvious here. Is it your role to assess the security threats to a building?
A Yes.
Q You also mentioned that you have a supervisory role; is that right?
A Yes.
Q And what is -- who do you supervise? Let me start there.
A I could supervise inspectors.

Q And what is your role as the supervisor for inspectors?
A To manage them during an operation or maybe daily activities.
Q Do you give instructions to your inspectors?
A Yes.
Q Do you -- does that include both in the field and out of the field?
A Yes.
Q Were you ever assigned outside of Atlanta, Georgia as either an inspector or an APM?
A Yes.
Q How many times?
A Over the past four years quite a bit. Ten.
Q So let me try and narrow it then. In August of 2025, were you ever assigned outside of Atlanta, Georgia?
A Yes.
Q Where were you assigned?
A The Edward Roybal Federal Building.
Q Is that the building we're in now?
A Yes.
Q So here in Los Angeles?
A Yes.
Q When did you get assigned to the Edward Roybal Federal Building?
A I believe it was July, July the 8th I believe.

Q You said that approximately 10 times in the last four years you've been assigned outside of your home reporting office. In what circumstances are you assigned to outside areas for your duties as an FPS officer?
A If the region city needs assistance from other FPS law enforcement personnel, they'll send out a warning order stating that, hey, we need you in a particular area to perform these particular duties and then we'll go and (inaudible) those duties.
Q And is that why you were in Los Angeles?
A Yes.
Q While you were in Los Angeles did you become familiar with an individual named Inspector Leo Ranjo (phonetic)?
A Yes.
Q Had you met him prior to your time in Los Angeles?
A No.
Q Was he one of the people you were assigned to supervise while you were here in LA?
A Yes.
Q I want to talk about that a little bit more in a minute here but before we do that you mentioned that you were assigned to the Edward Roybal Federal Building, right?
A Yes.
Q Were you assigned to just this specific building?
A Yes.

Q Were you assigned to protect other buildings in the same complex?

A Yes, any building within the -- this is like sir a campus, three, you know, VA building, this building and the (indisc.) center but my main responsibility is focus on the (indisc.) only -- I'm sorry -- the Federal Roybal Building only.

Q So I want to make sure that we have some clarity here because we've heard Roybal Federal Complex and we've heard Roybal Federal Building.

A Yes.

Q And so you mentioned that there is a campus of buildings, right?

A Yes.

Q Are those all federal buildings to your knowledge?

A Yes.

Q And were you outside of those federal buildings on August 8th, 2025?

A Outside of just the Roybal Federal Building.

Q And there are other buildings there as well, right?

A Yes.

Q What were your duties on August 8th of last year?

A We mainly did a lot of crowd control. Protestors would peacefully protest and sometimes they would not and they would come on federal property and we would try to maybe tell them to get off federal property. So that was our main duties, that

was my main you know -- that was our main function while we was here.

Q You said you were supervising Inspector Ranjo on August 8th. Were you supervising other FPS officers as well?

A Yes.

Q Approximately how many?

A Fourteen.

Q And what were their responsibilities, including Inspector Ranjo, on August 8th, 2025?

A To protect the federal building and its employees.

Q Did that include the same duties you mentioned which was asking people to step off of federal property?

A Yes.

Q And did they receive instruction as to what constituted federal property?

A Yes.

Q Did you provide briefings on what was and wasn't federal property?

A Yes.

Q What is your understanding of what the federal property line is for the Roybal Federal Building?

A On the main sidewalk?

**MS. ABEL:** Objection, hearsay.

**THE COURT:** And why don't we go ahead -- we're going to end right now and then I can address this when we return. I

will give the jurors a limiting instruction with this witness as with the other witness. They may be testifying about their views as to what is public property and what is federal property, et cetera. And as I've already indicated to you that's not dispositive on those questions.

Okay. So with that I'm going to ask the witness to step outside of the courtroom. And if I could see the parties briefly at sidebar just to confirm the time that I'll have the jurors return on Monday.

**(Requested transcription ended at 2:29:54 p.m.)**

**CERTIFICATION**

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

April 5, 2026

Signed Dated

*TONI HUDSON, TRANSCRIBER*